```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Angela K. Clark,                    :

       Plaintiff,              :

  v.                                :    Case No.  2:16-cv-94

                                          :    JUDGE MICHAEL H. WATSON
Commissioner of Social Security,        Magistrate Judge Kemp

       Defendant.              :

                    REPORT AND RECOMMENDATION

                         I.   Introduction

    Plaintiff, Angela K. Clark, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on March 13, 2015, and alleged that Plaintiff became disabled on April 22, 2014.

    After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on September 29, 2015.  In a decision dated October 26, 2015, the ALJ denied benefits.  That became the Commissioner's final decision on December 11, 2015, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on April 8, 2016.  Plaintiff filed a statement of specific errors on May 5, 2016, to which the Commissioner responded on August 8, 2016.  Plaintiff did not file a reply brief, and the case is now ready to decide.

    II.   Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 41 years old as of the date of the hearing and who is a high school graduate, testified as follows.

Her testimony appears at pages 38-56 of the administrative record.

Plaintiff was first asked about her most recent job.  She said she had worked in April, 2014, for Meals on Wheels, driving a delivery van and also packaging meals.  She was required to lift forty to fifty pounds.  Six years before that, she worked for a surveying company as part of a field crew.  In that job, she lifted thirty to forty pounds.  She had also operated a welding machine that made car parts, and lifted over fifty pounds on that job.

As far as why she could no longer work, Plaintiff said that she had neuropathy in her feet from chemotherapy and that she could not stay in one position very long.  She also had pain in her left upper leg and swelling in both arms which caused her to lose feeling and strength in her hands.  Plaintiff had also had neck surgery and had a plate in her neck.  She still had bad headaches and limitation in the range of motion of her neck.  Additionally, she had cancer surgery and had no feeling in her chest and numbness and tingling under her arms.  Mentally, she had experienced memory loss and was on medication for depression and anxiety.  She had difficulty sleeping and napped often during the day.

Last, Plaintiff testified about daily activities.  She could wash a few dishes and make her bed but could not do laundry or yard work.  She did not leave the house to visit people or to attend functions.  She would use a wheelchair, although her doctor had not prescribed it, for things like grocery shopping.  She could dress herself but buttons still posed a problem.

### III.  The Medical Records

The pertinent medical records are found beginning at page 280 of the record and can be summarized as follows.  Since the statement of errors focuses on Plaintiff's cervical disc disease

and breast cancer, the Court's summary of the records will be limited to those conditions as well.

The first record mentioned in Plaintiff's Statement of Errors is an office note from Dr. Thompson, who treated Plaintiff for neck and back pain. That note, dated May 15, 2014, shows that Plaintiff was reporting constant pain and said she had to quit her job. She said she had back spasms and numbness or tingling in her legs at night. Dr. Thompson noted that Plaintiff's examination was "consistently strong in regards to trigger point myofascial pain patterns" and he was considering medication and a home exercise program. He reported that trigger point injections, topical medications, and anti-inflammatories had been ineffective. She exhibited limited range of motion with right side bending. (Tr. 782-83). At a follow-up appointment on June 16, 2014, after Plaintiff had been given a foam roller for home exercise, she reported she had to discontinue its use due to pain, and that turning her head was becoming more painful. Dr. Thompson recommended additional tests. (Tr. 778-79). When he saw her again on July 11, 2014, she described some increased pain, and the MRI showed an increase in osteophytes and spinal stenosis at C5-C6. (Tr. 776-77). At the next appointment, Dr. Thompson noted symptoms suggestive of a left C6 radiculopathy and he was going to recommend surgery. (Tr. 774-75). She subsequently had surgery and on August 25, 2014 was described as doing well, with her left arm pain gone. (Tr. 767-69). She was doing "really well" on November 5, 2014, with her pain controlled by medication, and her next followup appointment was scheduled for three months. (Tr. 761-63).

The second set of records which Plaintiff summarizes in her Statement of Errors begins with a note from Dr. Sickle-Santanello dated November 25, 2014. Plaintiff had just been diagnosed with breast cancer. Various treatment options were discussed at that

time. (Tr. 716-17). She opted for surgery which included reconstruction. Because of an infection, her breast implants were removed. She also underwent chemotherapy, which was completed when she saw Dr. Zochowski, her reconstructive surgeon, on July 9, 2015. (Tr. 710). Any infections had resolved by that time.

On June 25, 2015, Plaintiff was evaluated for physical therapy. She had developed pain and swelling in both arms following surgery and chemotherapy. Her pain level at that time was reported to be six out of ten. Lymphedema sleeves were prescribed at that time. (Tr. 755-58). An oncology office consult note dated August 28, 2015 stated that Plaintiff had slight lymphedema in her upper extremities and Taxol-induced neuropathy. On examination, Plaintiff demonstrated a steady gait and normal range of motion. (Tr. 810-12).

State agency physicians also reviewed some of these records. Dr. Delphia concluded that Plaintiff could do light work with some restrictions on overhead lifting. (Tr. 88-89). Dr. Green reached the same conclusion. (Tr. 115-16).

### IV. The Vocational Testimony

Connie O'Brien-Heckler (referred to in the hearing transcript as Ms. O'Brien) was called to testify as a vocational expert at the administrative hearing. Her testimony begins at page 132 of the administrative record.

Ms. O'Brien first testified about Plaintiff's past relevant work. She said that the machine welder job which Plaintiff had done was a medium, semi-skilled job. Plaintiff had also worked as a cashier or stocker and as an office clerk, which were light and semi-skilled.

Next, Ms. O'Brien was asked some questions about someone with Plaintiff's background and who could work at the light exertional level but could perform only occasional overhead

reaching.  Further, the person could do simple, routine, repetitive work involving only simple work-related decisions with few, if any, workplace changes, and could not hold a position requiring strict production quotas or fast-paced work such as on an assembly line.  Ms. O'Brien said that someone with those restrictions could do not do any of Plaintiff's past work.  However, he or she could work as a mail sorter, furniture rental clerk, or cleaner.  Ms. O'Brien gave the numbers for those jobs which exist in the regional, state, and national economies.

Next, Ms. O'Brien was asked if someone who was limited to sedentary work and who could handle and finger on a frequent (but not continuous) basis, and was otherwise limited as described in the first hypothetical question, could be employed.  She said yes, identifying jobs such as inspector, call out operator, and charge clerk.  Those jobs could be performed by someone who had to stand for two minutes after sitting for an hour and who would be off task for 5% of the workday in addition to the usual breaks.  Having to stand every half hour for two minutes would not change that;  however, being off task for 10% of the workday would eliminate those jobs and other jobs.

In response to additional questions from Plaintiff's counsel, Ms. O'Brien testified, first, that if the person described in the third hypothetical could handle and finger only occasionally, only the job of call out operator would remain, and that taking two fifteen-minute breaks during the workday in addition to usual breaks would require an accommodation.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11-26 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2019.  Second, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including breast cancer, cervical degenerative disc disease, lymphedema, depressive disorder, and anxiety disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level although she could reach overhead only occasionally and handle and finger bilaterally only frequently.  Additionally, she was limited to simple, routine, repetitive work involving only simple work-related decisions with few, if any, workplace changes, and could not hold a position requiring strict production quotas or fast-paced work such as on an assembly line.

With these restrictions, the ALJ concluded that Plaintiff could not do any of her past relevant work, but she could perform the sedentary jobs identified by the vocational expert, including inspector, call out operator, and charge clerk.  The ALJ further determined that these jobs existed in significant numbers in the regional, the state, and the national economy.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

### VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises a single issue:  the ALJ erred in finding that Plaintiff could perform even a reduced range of sedentary work.  The gist of this argument appears to be that the ALJ incorrectly evaluated Plaintiff's credibility and relied on her testimony about daily activities to support a finding that she could work when her

testimony clearly indicated she could not.  This issue will be evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

Because Plaintiff asserts that the ALJ did not properly assess her credibility, the Court will focus its analysis on the ALJ's discussion of that issue.  It will then decide if that analysis applied the proper legal standards as set out in the case law, regulations, and Social Security Rulings.

As the summary of the testimony at the administrative

-7-

hearing shows, if Plaintiff's testimony were fully credited, she would be unable to do even a limited range of sedentary work. The ALJ found otherwise.  He noted that in addition to her testimony, when Plaintiff filled out a function report on April 7, 2015, "she endorsed problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, [and] climbing stairs...."  (Tr. 18).  Many of these restrictions do not appear in the ALJ's physical residual functional capacity finding due to the ALJ's determination that Plaintiff's testimony "was not credible."  Id.

By way of explanation, the ALJ first cited to regulations which state that the existence of impairments must be demonstrated by medical evidence and that "statements about pain or other symptoms will not alone establish disability."  Id.  He then said that he considered other factors in his credibility determination, including Plaintiff's daily activities, the nature of her symptoms, precipitating and aggravating factors, medications, side effects, treatment, and the objective medical evidence, both in terms of whether it confirmed Plaintiff's statements about pain or showed that she had conditions which were sufficiently severe that they reasonably could be expected to cause disabling pain.  (Tr. 19).  As to this last inquiry, the ALJ concluded that Plaintiff did have medically determinable impairments which could reasonably cause "some symptoms" but he also found that the objective medical evidence did not substantiate that those symptoms were as severe as Plaintiff said they were.  Id.

Taking her conditions separately, the ALJ first determined that the medical evidence about breast cancer did not support debilitating pain or limitations.  In support of that conclusion, the ALJ noted that Plaintiff completed chemotherapy, did not need radiation, had healed from the issues created by her

reconstruction surgery, and was managing her Tamoxifen-induced neuropathy with opiods and Gabapentin. She was also neurologically intact on examination. Id.

The ALJ turned next to her cervical disc disease. He pointed out that her neck pain was eliminated by surgery and any residual pain was controlled by medication. (Tr. 20). Her range of motion was normal. He also considered her lymphedema, again noting normal range of motion studies, evidence that Plaintiff indicated only minimal pain, and that the lymphedema was described as "slight." Id.

Finally, the ALJ observed that in addition to what he described as a "general lack of objective evidence to support her objective complaints," Plaintiff described daily activities which "are not consistent with the level and persistence of symptoms alleged," that she "went to doctor's appointments as needed," and that her life was "rather active and normal...." (Tr. 23). These factors, according the ALJ, further "impugn[ed] her credibility." Id. The ALJ did credit some of her testimony, however, in determining that she could do only sedentary work, a conclusion at odds with the opinions expressed by the state agency reviewers.

On the issue of credibility, a social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn

the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994); see also Hendriksma v. Comm'r of Social Security, 2015 WL 1477976, *5 (W.D. Mich. March 31, 2015)(finding "compelling reasons" to reverse an ALJ's credibility determination where "the record does not establish the type of inconsistency found by the ALJ").

Here, there is an argument to be made that the ALJ's conclusion that Plaintiff's activities of daily living belie her testimony about disabling symptoms is not well-supported. The two activities of daily living relied on by the ALJ were Plaintiff's ability to go to doctors' appointments and the fact that she led a "rather normal life." The first of these is something that many, if not all, applicants for disability benefits are able to do, and there is no inconsistency between going to see the doctor and not being able to put in a full day's work. As to the normality of Plaintiff's life, her testimony was that she could do only simple household chores like making her bed or washing a few dishes, that she was unable to do more strenuous chores or yard work, that she seldom left the house, and that she needed a wheelchair to go grocery shopping or to travel even a few blocks. Again, nothing about those activities is inconsistent with Plaintiff's description of many of her symptoms, including the inability to maintain any one position for more than a short period of time or to use her hands and fingers for grasping or fine manipulation - restrictions which, at the sedentary level, clearly have an impact on a claimant's ability to work, and restrictions not included in the ALJ's residual functional capacity assessment.

The other basis relied on by the ALJ was the lack of medical documentation as to the extent of Plaintiff's pain, which, as Plaintiff testified, is her most limiting factor. However, the ALJ found that she had conditions which could reasonably be

expected to cause some degree of pain or other potentially disabling symptoms.  Under the case law and regulation cited above, the absence of objective medical evidence as to the extent of a claimant's pain, while a factor which an ALJ may take into account, cannot be the only basis for rejecting a claimant's testimony.  Here, it appears that it was.

It is the case that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." Johnson v. Comm'r of Social Security, 535 Fed.Appx. 498, 507 (6th Cir. 2013), citing Ulman v. Comm'r of Soc Sec., 693 F.3d 709, 714 (6th Cir. 2012)).  That cannot be said of the ALJ's decision in this case.  The only other factor besides the medical evidence which the ALJ said he considered was Plaintiff's report of symptoms to her medical providers, but, again, she did not report symptoms which were inconsistent with the various postural restrictions she mentioned in her testimony.  Simply put, the ALJ relied on some factors that did not have substantial support in the record, and did not review the remainder of the record in sufficient depth to justify his conclusion that Plaintiff had none of the limitations about which she testified and which would likely impact the types of jobs she could perform.  Consequently, a remand for further proceedings is necessary.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

     The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                                      /s/ Terence P. Kemp  
                                                 United States Magistrate Judge